## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**IDDO BLACKWELL**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 09-7704**

**BURL CAIN, WARDEN**                                 **SECTION "I"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Iddo Blackwell, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 25, 2004, Blackwell was indicted by a grand jury in Washington Parish and charged with aggravated rape of his minor daughter, B.B., the forcible rape of his minor daughter, B.B., and aggravated incest with his minor daughter, B.B.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On November 30, 2003, the fifteen-year-old victim, B.B., contacted the Washington Parish Sheriff's Office and advised that she had run away from home to escape verbal, physical, and sexual abuse inflicted upon her by the defendant, her biological father.  B.B. stated that the defendant had been having sexual intercourse with her several times a week for several years, beginning when she was approximately ten years old.  B.B. explained that she was forced to sleep in the bed with the defendant while her mother, the defendant's wife, slept in the living room on the couch.  B.B. further explained that the defendant would call her profane names, hit her, and threaten to kill her if ever she resisted his advances.
>
> In response to B.B.'s allegations of abuse, a warrant was issued for the defendant's arrest.  When Washington Parish Sheriff's officials arrived to execute the warrant, the defendant fled out of the back of his residence.  The deputies pursued the defendant but were unable to catch him.
>
> Meanwhile, on December 3, 2003, JoBeth Rickles, a forensic interviewer with the Children's Advocacy Center, interviewed B.B.  During the interview, B.B. described the abuse inflicted upon her by the defendant.  B.B. stated that the sexual abuse began when she was approximately ten or eleven years old.  Initially, the defendant would fondle her breasts, vaginal area, and buttocks under her clothing.  Eventually, the defendant began inserting his penis into her vagina.  The defendant did not use a condom, and upon ejaculation he would deposit the semen onto B.B.'s stomach.  According to B.B., the defendant made her have sex with him "every two or three nights."  If she did not comply, the defendant

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 5, Indictment, 2/25/04.

became violent, cursing and hitting her. B.B. also described an incident wherein the defendant put an unloaded gun to her head and pulled the trigger because he thought she was sexually active with someone other than him. B.B. explained that she ran away from home and contacted the police because she "could not take it anymore."

Later that same day, the defendant turned himself in to the Washington Parish Sheriff's Office. After being advised of and waiving his rights, the defendant provided a videotaped statement. In his statement, the defendant initially denied ever "messing with" or having sex with B.B. He stated that B.B. was fabricating the allegations because she was upset that he punished her. The defendant denied that B.B. ever slept in the bed with him. Thereafter, once the investigating detective explained that if they were to find DNA evidence during their investigation the defendant would not be able to disprove the allegations, the defendant confessed. He initially attempted to minimize his culpability by stating that he had sex with B.B. "one time." He later admitted that he engaged in sexual intercourse with his daughter about once a week. The defendant stated he never threatened B.B. or forced himself on her. He explained, "she asked for it." The defendant claimed B.B. would come into his room, take her clothing off, get into the bed with him and start touching on him. He indicated that when he told her to stop, B.B. asked "why, you don't like it?" According to the defendant, the weekly sexual encounters went on for approximately two to three years. The defendant denied ever threatening B.B. with a gun.

R.B., B.B.'s younger brother, was later interviewed at the Children's Advocacy Center. R.B. stated that, at some point prior to B.B.'s report of the abuse to the police, she told him the defendant had been having sex with her. R.B. did not initially believe B.B.'s allegations. To prove the truth of the allegations, B.B. told R.B. to listen at the bedroom door that night. R.B. testified that, as he stood near the door, he heard the defendant and B.B. having sex inside the bedroom. B.B. was crying and asking her father to stop, but he did not comply.

At trial, R.B. and B.B. provided testimony consistent with the statements they provided at the Children's Advocacy Center. B.B. further testified that after the defendant's arrest he contacted her, told her he was sorry, and asked her to write him letters recanting her allegations. Because she loved her father, B.B. complied. B.B. testified that she wrote several letters to the defendant wherein she stated that she lied. B.B. testified that the letters were not true and were only written because the defendant told her to do so. Several letters written by B.B. were introduced into evidence and published to the jury at the trial.

(footnote omitted) State v. Blackwell, 953 So.2d 207 (La. App. 1st Cir. 2007) (Table);

State v. Blackwell, No. 2006-KA-1812, 2007 WL 866646, at *1-2 (La. App. 1st Cir. Mar.

3

23, 2007); State Record Volume 4 of 5, Louisiana First Circuit Opinion, 2006-KA-1812, pages 3-5, March 23, 2007.

On motion by appointed defense counsel, the state trial court appointed a sanity commission to evaluate Blackwell's current mental state and his mental state at the time of the offenses.[4] After receiving the psychiatric reports, the state trial court held a hearing on May 19, 2005, and found Blackwell competent to stand trial.[5]

Blackwell was tried before a jury on August 8, 9 and 10, 2005, and found guilty as charged on all three counts.[6] The state trial court denied Blackwell's subsequent motions for post-verdict judgment of acquittal and for a new trial in open court on August 11, 2005.[7]

The state trial court sentenced Blackwell on August 18, 2005, to serve life in prison without benefit of parole, probation or suspension of sentence on count one,

---

[4]St. Rec. Vol. 1 of 5, Appointment of Sanity Commission, 11/30/04; Application for Hearing to Determine Defendant's Mental Condition, 11/23/04; Trial Court Order, 11/29/04.

[5]St. Rec. Vol. 1 of 5, Minute Entry, 5/19/05; Psychiatric Report on Competence to Stand Trial Evaluation, 12/1/04; Psychiatric Report on Sanity at the Time of the Offense Evaluation, 3/4/05; St. Rec. Vol. 4 of 5, Hearing Transcript, 5/19/05.

[6]St. Rec. Vol. 1 of 5, Trial Minutes (five pages), 8/8/05; Trial Minutes (four pages), 8/9/05; Trial Minutes (two pages), 8/10/05; St. Rec. Vol. 2 of 5, Trial Transcript, 8/8/05; St. Rec. Vol. 3 of 5, Trial Transcript (continued), 8/8/05); Trial Transcript, 8/9/05; Trial Transcript, 8/10/05; St. Rec. Vol. 4 of 5, Trial Transcript (continued), 8/10/05.

[7]St. Rec. Vol. 1 of 5, Minute Entry, 8/11/05; Motion for Post-Verdict Judgment of Acquittal, 8/11/05; Trial Court Order, 8/11/05; Motion for New Trial, 8/11/05; Trial Court Order (2), 8/11/05; St. Rec. Vol. 4 of 5, Motion Hearing Transcript, 8/11/05.

aggravated rape.[8]  He also was sentenced to serve 30 years in prison on count two, forcible rape, to run consecutively to the sentence for count one.  He was then sentenced to serve 20 years in prison on count three, aggravated incest, to run consecutively to the other sentences.  The court denied counsel's motion to reconsider the sentences.[9]

On direct appeal, Blackwell's appointed counsel argued that the state trial court erred in denying the defense motions to suppress Blackwell's confession and to introduce evidence of the victim's relationship with her boyfriend.[10]  On March 23, 2007, the Louisiana First Circuit affirmed Blackwell's convictions and sentences, finding no merit in either of his claims.[11]

On February 22, 2008, without written reasons, the Louisiana Supreme Court denied Blackwell's subsequent writ application raising the same grounds for relief and arguing also that he had received ineffective assistance of counsel at trial and on appeal.[12]

---

[8]St. Rec. Vol. 1 of 5, Sentencing Minutes, 8/18/05; Commitment, 8/18/05; St. Rec. Vol. 4 of 5, Sentencing Transcript, 8/18/05.

[9]Id.; St. Rec. Vol. 1 of 5, Motion to Reconsider, 8/18/05; Trial Court Order, 8/18/05; St. Rec. Vol. 4 of 5, Sentencing Transcript, 8/18/05.

[10]St. Rec. Vol. 4 of 5, Appeal Brief, 2006-KA-1812 (undated).

[11]State v. Blackwell, 953 So.2d at 207; State v. Blackwell, 2007 WL 866646, at *1; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, 3/23/07.  In a concurring opinion, one judge noted his concern with the majorities failure to correct the 30-year sentence on count two, which should have had a minimum of two years without parole, probation or suspension of sentence.  The majority noted the illegally lenient sentence and did not address it because it had not been raised by the State.

[12]State ex rel. Blackwell v. State, 976 So.2d 1281 (La. 2008); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2007-KH-1059, 2/22/08; La. S. Ct. Writ Application, 07-KH-1059, 5/21/07 (postmarked 4/26/07, dated 4/21/07); La. S. Ct. Letter, 2007-KH-1059, 5/21/07 (postmarked 4/26/07).

Blackwell's conviction became final 90 days later, on May 22, 2008, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

During the 90-day period, on March 10, 2008, Blackwell submitted an application for post-conviction relief to the state trial court raising four grounds for relief:[13] (1) There was insufficient evidence at trial to support the verdict. (2) The state trial court violated his double jeopardy rights by trying him on all three counts. (3) Cumulative errors violated his due process rights. (4) Counsel provided ineffective assistance when he failed to investigate defendant's mental incompetence.

On July 7, 2008, the state trial court denied the post-trial application.[14] The court held that the first claim, insufficient evidence, had been addressed on direct appeal and was barred from further review under La. Code Crim. P. 930.4(A).[15] The court found that the second claim, double jeopardy, should have been raised on appeal and was without

---

[13]St. Rec. Vol. 4 of 5, Uniform Application for Post-Conviction Relief, 3/12/08 (dated 3/10/08).

[14]St. Rec. Vol. 4 of 5, Reasons for Judgment, 7/7/08.

[15]La. Code Crim. P. art. 930.4(A) provides for the dismissal of a post conviction application if it raises claims fully litigated on appeal.

merit.[16]  The court denied relief on the third claim, cumulative error, because it was repetitive of the first two claims.  Finally, the court denied the claim of ineffective assistance of counsel, because Blackwell failed to present any factual support for the claim and because a sanity commission had in fact been convened.

The Louisiana First Circuit denied Blackwell's subsequent writ application without written reasons on October 24, 2008.[17]  The Louisiana Supreme Court also denied without reasons Blackwell's writ application to that court on September 25, 2009.[18]

## II.   FEDERAL HABEAS PETITION

On January 15, 2010, the clerk of this court filed Blackwell's petition for federal habeas corpus relief, in which he raises the following grounds for relief:[19] (1) The state trial court erred in denying the motion to suppress his confession. (2) The state trial court erred in denying his motion to introduce evidence of the victim's relationship with her boyfriend. (3) There was insufficient evidence at trial to support the verdict. (4) The state

---

[16]La. Code Crim. P. art. 930.4(C) provides for the dismissal of a post conviction application if it raises a claim which should have been raised on appeal.

[17]St. Rec. Vol. 4 of 5, 5th Cir. Order, 2008-KW-1451, 10/24/08; St. Rec. Vol. 5 of 5, Copy of 1st Cir. Writ Application, dated 7/14/08.

[18]State ex rel. Blackwell v. State, 18 So.3d 88 (La. 2009); ; St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 08-KH-2743, 11/18/08 (postmark 11/6/08, dated 11/5/08); La. S. Ct. Letter, 2008-KH-2743, 11/18/08 (postmark 11/6/08).

[19]Rec. Doc. No. 3.

trial court erred in trying him on all three counts in violation of his double jeopardy rights. (5) Counsel provided ineffective assistance when he failed to investigate defendant's mental incompetence. (6) The cumulative errors violated his due process rights.

The State filed a response in opposition to Blackwell's petition arguing that his petition was not timely filed and that his claims are otherwise without merit.[20] Blackwell responded to the State's opposition, arguing alternatively that his petition is timely filed and, if not, his delay should be excused.[21]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore

---

[20]Rec. Doc. No. 12.

[21]Rec. Doc. Nos. 13, 14.

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Blackwell's petition, which, for reasons discussed below, is deemed filed in this federal court on November 18, 2009.[23]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Blackwell's petition is not timely filed. This conclusion, however, is based on the State's failure to consider the applicable mailbox rule to Blackwell's 2007 writ application to the Louisiana Supreme Court. The State looked to the postmark date of April 26, 2007, to argue that Blackwell's application was not timely filed under La. S. Ct. Rule X§5 and was therefore not properly filed for tolling purposes, citing Butler v. Cain, 533 F.3d 314 (5th Cir. 2008). The State, however, failed to take into account that, for prisoners, the date when prison officials receive the pleading

---

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Blackwell's petition was filed by the clerk of this court on January 15, 2010, when the filing fee was paid. Blackwell's signature on the petition is dated November 18, 2009. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

The signatures on the subject writ application and the cover letter are dated April 21, 2009,[24] which also is the date on which Blackwell claims in his traverse to have given it to prison officials.[25] Without evidence to the contrary, the court will presume that this is the earliest date on which he could have submitted it to prison officials for mailing. His 2007 writ application is therefore timely under Louisiana law and properly filed for AEDPA tolling and limitations purposes. The State's limitations defense is rejected.

## IV.    PROCEDURAL DEFAULT (CLAIM NO. 4)

Among the claims raised in this federal petition, two of Blackwell's claims, insufficient evidence and double jeopardy, were denied in his state post-conviction proceedings as procedurally barred under Louisiana law. As noted above, on July 7, 2007, the state trial court barred review of the insufficient evidence claim pursuant to La. Code Crim. P. art. 930.4(A) as repetitive of the claims addressed on direct appeal. The bar in Article 930.4(A) prevents further review of a claim previously raised on appeal,

---

[24]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 07-KH-1059, 5/21/07 (postmark 4/26/07, dated 4/21/07); Cover Letter, 4/21/07.

[25]Rec. Doc. No. 13, p. 3.

based on the assumption that an issue was addressed in a prior proceeding and is now repetitive. The presumption in the rule is that the claims were not new or different from something previously addressed and resolved on appeal. Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994). "[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. For this reason, I will address the merits of Blackwell's insufficient evidence claim later in this report.

The state trial court, however, also barred review of the double jeopardy claim because that claim could have been raised on direct appeal and was not. This was the last reasoned decision on this claim by the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991). For the following reasons, the double jeopardy claim is procedurally barred and may not be addressed by this court.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered. Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument**

**concerning the default as part of any objections he may file to this report**.  Magouirk, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  The last reasoned decision of the state trial court relied on La. Code Crim. P. art. 930.4(C) to deny relief and dismiss Blackwell's post-conviction double jeopardy claim, presented in this case as Claim No. 4.

A.    INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is

"independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902.

La. Code Crim. P. art. 930.4(C) is clearly independent state law procedural grounds for denying review of an improperly raised post-conviction claim. <u>Bennett v. Whitley</u>, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); <u>Washington v. Cain</u>, 2000 WL 863980 (E.D. La. June 27, 2000) (same). These state procedural bars are presumptively adequate when the state court expressly and regularly relies on them in deciding not to review a claim for collateral relief. <u>Glover</u>, 128 F.3d at 902.

The state court in this case expressly ruled that Blackwell was not entitled to review of his double jeopardy claim, because it had could have been raised on appeal and was not. I find that the bar imposed under La. Code Crim. P. art. 930.4(C) is both independent and adequate to bar review of the merits of Blackwell's double jeopardy claim in this court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental

miscarriage of justice." <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id</u>. at 486.

In this case, Blackwell has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented him from raising this claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Blackwell's double jeopardy claim is therefore procedurally barred from review by this federal habeas corpus court. See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[26]

## C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Blackwell may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying

---

[26]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Blackwell does not provide any indication and the record contains nothing that suggests his actual innocence on the underlying convictions.  On the contrary, the evidence of his guilt was substantial as discussed later in this report.  His claims for relief in this case address alleged errors in the criminal proceedings and not his factual innocence.  He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Blackwell has failed to overcome the procedural bar, and his double jeopardy claim must be dismissed with prejudice for that reason.

V.     STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    DENIAL OF MOTION TO SUPPRESS CONFESSION (CLAIM NO. 1)

Blackwell alleges that his inculpatory statement after his arrest was involuntary, because of his diminished mental capacity and the sheriff's deputies were able to induce him into confessing with their promises. Specifically, he suggests that the officers' reference to his ability to get psychological help if he confessed meant that he would not get jail time. As such, he claims that the state trial court erred in denying the pretrial motion to suppress his confession.

Blackwell's appointed counsel raised this issue on direct appeal to the Louisiana First Circuit, which held that the trial court did not err in denying the motion after it considered the videotaped confession and the testimony received at the suppression hearing. The court found that nothing the officers said to Blackwell amounted to inducements, threats, or improper promises. The court resolved that Blackwell's

18

confession was freely and voluntarily made. This was the last reasoned decision on this issue.

The admissibility of a confession is a mixed question of law and fact. <u>Miller v. Fenton</u>, 474 U.S. 104, 112 (1985). The determination of the voluntariness of a confession requires the court to consider the "totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 224 (1973). A federal court entertaining a collateral challenge to the voluntariness of a confession is obliged to afford a presumption of correctness to state court findings of fact if fairly supported in the record, <u>Miller</u>, 474 U.S. at 117, but is authorized to exercise de novo review over the ultimate conclusion of whether, under the totality of the circumstances, the confession was "voluntary." <u>Carter v. Johnson</u>, 131 F.3d 452, 461-62 (5th Cir. 1997). Although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" <u>Carter</u>, 131 F.3d at 462 (citing <u>Colorado v. Connelly</u>, 479 U.S. 157, 164 (1986)).

There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986); <u>Soffar v. Cockrell</u>, 300 F.3d 588, 592 (5th Cir. 2002).

First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion or deception. <u>Moran</u>, 475 U.S. at 421. Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. <u>Carter</u>, 131 F.3d at 462 (citing <u>Connelly</u>, 479 U.S. at 163-67). Second, the relinquishment must be made with a full awareness of the nature of the right being waived. <u>Id</u>.

Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are also entitled to deference when supported by the record. <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1225 (5th Cir. 1993); <u>Self v. Collins</u>, 973 F.2d 1198, 1204 (5th Cir. 1992); <u>see also Miller</u>, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness). Further, the habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. <u>Pemberton</u>, 991 F.2d at 1225 (citing <u>Sumner v. Mata</u>, 455 U.S. 591, 597 (1982)).

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error analysis. <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991). Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S.

619, 637 (1993). Therefore, even if this court were to find that Blackwell's Fifth Amendment rights were violated, the court must also consider whether use of the confession at trial was harmless in determining the verdict. Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir. 2003).

In Blackwell's case, as required by Jackson v. Denno, 378 U.S. 368 (1964), the state trial court conducted a full evidentiary hearing on the admissibility of his inculpatory statement to sheriff's deputies.[27] After taking the officers' testimony and reviewing the videotaped confession, the trial court concluded that the motion to suppress was not well-founded.[28]

On direct appeal, the Louisiana First Circuit entered its own findings, which constitute the last reasoned decision on this issue. The appeal court recognized that the trial court was in the best position to judge the credibility of the detectives and to assess the comments made during the taking of the confession.[29] The court further recognized that the record before the trial court also contained testimony that Blackwell was advised of his Miranda warnings, that he understood and waived those rights, and that it appeared to the detectives that he understood his rights.

---

[27]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 9-29, 8/8/05.

[28]St. Rec. Vol. 3 of 5, Trial Transcript (continued), p. 212, 8/8/05.

[29]State v. Blackwell, 2007 WL 866646, at *4; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, p. 8, 3/23/07.

The appellate court considered and reviewed the same evidence and testimony, including the "detailed confession," received at the suppression hearing[30] and held that the confession was free and voluntary. The court found that the "thrust of the comments and questions" was simply that Blackwell "would have an easier time if he told the truth."[31] The court held that these suggestions that a defendant should cooperate did not amount to an impermissible promise or inducement under Louisiana law. The court also resolved that, while detectives told Blackwell he could receive psychological help and/or treatment, they never promised or led Blackwell to believe that he would not be prosecuted and incarcerated if he told the truth.

On federal habeas review, this court must presume that the factual determinations made by the state courts were correct, including that Blackwell did not demonstrate that anything the detectives told him amounted to an unlawful inducement, threat or promise to compel him to make the otherwise voluntary statement. The same presumption applies to the court's factual findings concerning the voluntariness of the confession, including that Blackwell was advised of his <u>Miranda</u> rights, that he indicated that he understood his rights and that he voluntarily waived those rights. <u>See</u> <u>Pemberton</u>, 991 F.2d at 1225.

To overcome the presumption of correctness as to these findings, Blackwell must rebut them by clear and convincing evidence, which he has not done. In his federal

---

[30]<u>Id.</u>, at *4; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, p. 8, 3/23/07.

[31]<u>Id.</u>, at *4; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, p. 8, 3/23/07.

habeas petition, Blackwell merely repeats his allegations of coercion already addressed by the state courts. These allegations are unsupported by any evidence adduced at the motion hearing, on appeal or otherwise. The state courts' factual determinations regarding voluntariness are adequately supported by the record. Therefore, this court on habeas corpus review must accept as conclusive the state courts' factual determination that the challenged statement or confession was voluntary and was not a product of coercion. Since the statement was voluntary, harmless error analysis is unnecessary.

Accordingly, the state courts' denial of relief on this issue is not contrary to or an unreasonable application of Supreme Court precedent. Blackwell is not entitled to relief on this claim.

## VII.   DENIAL OF MOTION TO INCLUDE EVIDENCE (CLAIM NO. 2)

Blackwell argues that the state trial court erred in denying his motion to introduce at trial evidence that his daughter B.B. was sexually active with her 18-year-old boyfriend. Blackwell wanted to introduce the testimony of three witnesses to challenge B.B.'s credibility and to present a defense of motive. Specifically, his counsel planned to use the testimony to establish that B.B. was motivated to fabricate the charges against her father, Blackwell, so that he would not prevent her from seeing her boyfriend and/or to prevent him from instituting charges against the boyfriend. Blackwell argues that the trial court was confused about the intended use of the testimony and denied the motion

as if the testimony was intended solely as impeachment to show a prior inconsistent statement.

Blackwell's counsel raised this claim on direct appeal. The Louisiana First Circuit reviewed the testimony proffered by defense counsel in connection with the motion. This included testimony from the victim's cousin that B.B. confided in her that she had been having sex with her boyfriend and that at one time thought she might be pregnant.[32] The cousin also testified that B.B. never told her that Blackwell was abusing her, although she did tell her that Blackwell was threatening to bring charges against her boyfriend. B.B. also told her cousin that she was going to make sure that Blackwell went to jail before her boyfriend did.[33]

The proffer also included the testimony of Deputy Ernie Corkern and Kendall McKenzie, the principal of B.B.'s school. Corkern testified that he responded to a complaint from Blackwell that the school reported that his daughter, B.B., had left school with her boyfriend.[34] He stated it was a truancy matter left to school authorities to address. McKenzie testified that B.B. returned to school about an hour after leaving and was placed on in-school suspension.[35] Several months later, B.B. was disciplined at

---

[32]State v. Blackwell, 2007 WL 866646, at *5; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, p. 10, 3/23/07.

[33]See St. Rec. Vol. 3 of 5, Trial Transcript (continued), pp. 220-24, 8/8/05.

[34]Id., pp. 214-15.

[35]Id., pp. 217.

school again for kissing her boyfriend at school before class.[36]  She was again given in-school suspension for six days.

The court resolved that Louisiana evidentiary rules excluded evidence of B.B.'s sexual behavior with anyone other than Blackwell, no matter its intended purpose.  Such evidence is allowed under Louisiana law only to prove a different source of semen or of injury within 72 hours of the crime, or where the defendant attempts to prove consent.  The court held that these issues were not before the court and the evidence was therefore inadmissible.  The court further held that the trial court's ruling did not prevent testimony from these same witnesses for other purposes; for example, to show motive.

The trial court's order precluded only testimony related to the sexual relationship between B.B. and her boyfriend.  Blackwell was free to introduce the evidence to establish B.B.'s upset and disagreement with Blackwell and/or his disapproval of the boyfriend, all of which focused on motive.  The court held that the trial court did not err in denying Blackwell's motion.

As an initial matter, federal habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir.1992). The states are free to implement procedures regarding the admission of evidence, provided

---

[36]Id., pp. 218.

those procedures do not infringe on a constitutional guarantee. <u>Burgett v. Texas</u>, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. <u>Lisenba v. People of the St. of Cal.</u>, 314 U.S. 219, 236-37 (1941); <u>Peters v. Whitley</u>, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.) "Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." <u>Thomas v. Lynaugh</u>, 812 F.2d 225, 230-231 (5th Cir.1987) (citations omitted).

This issue presents a mixed question of law and fact. <u>Dickson v. Sullivan</u>, 849 F.2d 403, 405-06 (9th Cir. 1988). This court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent concerning trial fairness.

The relevant Louisiana evidentiary rule is La. Code Evid. art. 412(A), which provides that "[w]hen an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible." The exceptions regarding semen source and consent mentioned by the

Louisiana First Circuit are found in Article 412(B), and neither Blackwell nor the record suggest that they are relevant here.

In this instance, there is no question that the testimony Blackwell sought to introduce involved at least in part sexual conduct between B.B. and her boyfriend. Trial counsel's intended use of the evidence was to establish that B.B. was sexually active and that her relationship with the boyfriend was problematic in that B.B. was upset with Blackwell's disapproval and his threats to end the relationship and/or have the boyfriend arrested.[37]

As noted above, the state trial court did not prohibit use of the testimony for some purposes, which the state courts attributed to the motive defense. The motion was denied solely to exclude use of the testimony to establish the sexual nature of their relationship, which was specifically prohibited by Louisiana law and not necessary to Blackwell's motive defense.

For due process purposes, there was nothing about the alleged sexual conduct between B.B. and her boyfriend which was critical, crucial or highly significant to Blackwell's case. The jury needed only to know that B.B. was angry with her father for interfering in her relationship with the boyfriend and that this was her motive for bringing the charges against him. In fact, counsel was able to introduce evidence of

---

[37]I find it curious that Blackwell would want to introduce evidence that confirms the inculpatory testimony from B.B. that Blackwell became angry and violent when he thought that she was sexually active with her boyfriend and ordered her to stop seeing him. Perhaps this is why counsel chose not present the testimony from Watts at trial after hearing B.B. testify.

B.B.'s alleged defiance toward her father's rules and discipline through other witnesses. The sexual details of her relationship with the boyfriend were not relevant or probative. It would have served no purpose but to embarrass B.B. and to sully her reputation before the jury, the very thing the state rape shield statute is designed to prevent. Accord Michigan v. Lucas, 500 U.S. 145, 146 (1991) (the purpose of the rape shield laws is to "protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior.")

The evidentiary ruling by the state trial court to disallow the introduction of testimony related to the sexual nature of B.B.'s relationship with her boyfriend did not prevent Blackwell from pursuing a defense that B.B. had a motive to fabricate the charges. Petitioner has not established a due process violation or other cognizable federal issue for this court to consider on habeas review. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. Blackwell is not entitled to relief on this issue.

VIII.  INSUFFICIENT EVIDENCE (CLAIM NO. 3)

Although Blackwell captions his next argument as a claim of insufficient evidence, he instead presents three arguments unrelated to sufficiency of the evidence to support the verdict. First, he alleges that his Fifth and Sixth Amendment rights were violated because he was tried for three crimes instead of just one, which inflamed and prejudiced the jury. Second, he asserts that the main evidence relied upon by the State was his

28

confession, which was involuntarily induced by the promises of the Sheriff's detectives. Third, he argues that the trial court would not allow testimony from three witnesses to show that B.B. was having sex with her boyfriend, which would have enhanced his ability to discredit her testimony.

Blackwell first presented these arguments as one claim in his application for post-conviction relief in the state trial court. The court found this claim repetitive of issues raised on appeal, and as discussed previously the court barred review of the claim under La. Code Crim. P. art. 930.4(A). There is no question that his second and third arguments were addressed on direct appeal, and I have already considered them in this report and concluded that Blackwell is not entitled to relief on his claims that his confession was involuntary and that he was improperly denied the opportunity to present evidence of B.B.'s sexual relationship with her boyfriend.

I further note that the remaining prong of this claim, that he was improperly charged with three crimes, is repetitive of the double jeopardy claim, which is procedurally barred as discussed earlier in this opinion. That claim was barred from review under La. Code Crim. P. art. 930.4(C), which prevents its review here, for the reasons addressed previously.

Nevertheless, even if this court were to consider the sufficiency of evidence presented at trial, Blackwell would not be entitled to relief under Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the court must determine, after viewing the evidence

in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. Guzman, 934 F.2d at 82 (citing Tyler v. Phelps, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Blackwell was convicted of three distinct crimes, aggravated rape of a child under age 12,[38] forcible rape and aggravated incest. Under Louisiana law, to prove aggravated rape of a child under 12 years old, a violation of La. Rev. Stat. Ann. § 14:42, the State must prove: (1) anal, oral or vaginal penetration deemed without consent of the victim because of (2) the victim's age at the time of the rape. State v. Williams, 950 So.2d 126 (La. App. 2d Cir. 2007); State v. Wright, 690 So.2d 850, 856 (La. App. 3d Cir. 1997). Moreover, "[a]ny penetration, however slight, . . . is sufficient." State v. Self, 719 So.2d 100, 101 (La. App. 3d Cir. 1998).

On the charge of forcible rape, La. R.S. 14:42.1 provides in relevant part:

A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

---

[38]According to the argument at trial, B.B.'s age was the aggravating factor. St. Rec. Vol. 4 of 5, Trial Transcript, pp. 61-62, 8/10/05.

Thus, to convict Blackwell of forcible rape, the State had the burden of proving: (1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. State v. Fruge, 34 So.3d 422, 425 (La. App. 3d Cir. 2010) (citing State v. Schexnaider, 852 So.2d 450, 457 (La. App. 3d Cir. 2003)).

Aggravated incest is defined in La. Rev. Stat. Ann. § 14:78.1, which at the time provided in relevant part:[39]

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection (B) with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
> B. The following are prohibited acts under this Section:
> (1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

---

[39] The statute was amended later in 2004 to provide that consent was not a defense and to correct reference to "aggravated sexual battery" to read as " second degree battery." 2004 La. Acts 648, § 1 (approved 7/5/04); 2004 La. Acts 676, § 1 (approved 7/5/04).

The following definition of sexual battery under La. Rev. Stat. Ann. § 14:43.1, as it appeared at the time,[40] is also relevant to the findings of the jury in Blackwell's case:

A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.

The testimony of the victim alone can be sufficient to establish the elements of each of these sex offenses under Louisiana law. State v. Maise, 805 So.2d 1141, 1151 (La. 2002) (aggravate rape); State v. Mitchell, 453 So.2d 1260 (La. App. 3d Cir. 1984) (aggravated rape); State v. Savario, 721 So.2d 1084, 1089 (La. App. 1st Cir. 1998) (forcible rape); State v. Bolden, 852 So.2d at 1057 (aggravated incest).

At trial, B.B. recalled the first time her father called her into his bedroom after he had been drinking.[41] She testified that he started touching her and then her memory went blank. She also recalled the first time her father tried to have sex with her, when her mother and brothers left the house with friends, and he took her into the back shed and

---

[40]In 2006, the statute was amended to provide for specific punishments relative to the age of the victim and to provide for other post-incarceration monitoring and fees. 2006 La. Acts 103, § 1 (approved 6/2/06). The maximum sentence was change to 99 years in 2008. 2008 La. Acts 33 (effective 6/2/08).

[41]St. Rec. Vol. 3 of 4, Trial Transcript, p. 70, 8/9/05.

touched her clothes.[42]  She testified that while her pants were down, he tried to put "his thing" into her backside.

She testified that the incidents began happening more and more as she entered high school.[43]  She said her father, Blackwell, slept naked and she slept with him, wearing a nightgown and underwear while her mother slept in the living room on the couch.[44]  B.B. testified that Blackwell would just start touching her under her clothes and she would push him away, but he would not stop.  She testified that she tried to tell him to stop, but he would get mad, hit her and curse at her.  She testified that she would just give in, so he would stop.[45]

B.B. testified that, the night she left home, her father had gotten mad at her.[46]  She said she had told her brother R.B. what was going on and she told him she was leaving. She testified that he already knew about the abuse, and he gave her $5.  She then told her mother she was leaving and her mother just gave her a funny look.[47]  She testified that when she was walking out, her father grabbed her, asked where she was going, and she told him she was going to check on the laundry, but instead ran to the neighbor's house.

---

[42]Id., p. 71.

[43]Id., p. 72.

[44]Id., p. 73.

[45]Id., pp. 73-74.

[46]Id., p. 74.

[47]Id., p. 75.

She said she called a friend to pick her up, went to the friend's house and called the police,[48] because she was tired of it and could not take it anymore.[49]

B.B. also testified that her father had threatened to kill her, and had threatened her with a gun.[50] She stated that one day, while she was still living at home, he got mad at her and she was on the couch crying.[51] She stated that he put his gun to her head, told her that he could blow her head off right there, and pulled the trigger, but there was no bullet in it. She also testified that he sometimes threatened her when he got mad at her in bed and would tell her that she would be lucky to wake up in the morning.

B.B. stated that she told the police and the interviewers that her father had sex with her every night or every other night.[52] She recalled telling the officers that he did not use protection and that he "wiped his sperm off of [her] stomach with a towel."[53]

The Child Advocacy Center counsel, JoBeth Rickles, also testified about B.B.'s recorded interview with her.[54] The videotape was played for the jury.[55] In that videotaped

---

[48]Id., pp. 75, 83.

[49]Id., p. 79.

[50]Id., p. 76.

[51]Id., p. 77.

[52]Id., pp. 84-85.

[53]Id., pp. 85-86.

[54]Id., p. 108.

[55]St. Rec. Vol. 3 of 5, Trial Transcript, p. 5, 8/10/05.

interview,[56] B.B. stated that the sexual abuse began when she was ten or eleven years old and she described it in detail.  B.B. also relayed the same story about which she testified at trial, when Blackwell put the unloaded gun to her head and pulled the trigger.  She stated in the interview that this happened because he thought she was sexually active with someone other than him.  B.B. also explained in the interview that she ran away from home and contacted the police because she could not take it anymore.

B.B. also testified that, after she reported her father to police, he called her to tell her that he loved her and was sorry.[57]  He also asked her to write letters to say she was lying about the abuse.  At the request of defense counsel, B.B. read the letters she wrote to her father recanting her claims.[58]  She testified that she only wrote them because he asked her.

On this issue, the jury also later heard the testimony of Dr. Adrienne Atzemis, an assistant professor at LSU medical school and a pediatric medicine specialist, that there is a phenomenon of recantation that is often triggered by the same fears, embarrassment

---

[56]The record does not contain a transcript of the interview.  However, the substance of the statement was summarized by the Louisiana First Circuit in its findings of fact, which are entitled to deference by this court.  State v. Blackwell, 2007 WL 866646, at *1-2; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, pp. 3-5, 3/23/07.

[57]St. Rec. Vol. 3 of 4, Trial Transcript, p. 78, 8/9/05.

[58]Id., pp. 86-95.

and lack of family support that cause a child to keep sexual abuse secret in the first place.[59]

The jury also heard the testimony of B.B.'s younger brother R.B., who testified that his sister told him that their father was "messing with her and stuff."[60]  Because he did not believe her, he listened at the door that night.  He said he heard B.B. crying and asking her father not to mess with her,[61] and he heard his father say he would do it anyway.  He also testified that, sometime after that night, he saw his father threaten B.B. with a gun.[62]  R.B. testified that his father and B.B. were "messing around" again about a week later when he listened at the door.[63]  He said he did this to make sure he heard what he thought he heard the first time.

B.B.'s mother, Rebecca Blackwell, testified that she slept in the bed with her husband and B.B. had a bed in their bedroom.[64]  She testified that she never saw her husband sexually abuse or assault their daughter.  She admitted to seeing him push B.B.

---

[59]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 12-13, 8/10/05.

[60]St. Rec. Vol. 3 of 5, Trial Transcript, p. 58, 8/9/05.

[61]Id., pp. 58-59.

[62]Id., pp. 59-60.

[63]Id., p. 66.

[64]St. Rec. Vol. 3 of 5, Trial Transcript, p. 27, 8/10/05.

and punish her, to which B.B. exhibited a bad attitude.[65]  She denied that any of the abuse

occurred.  B.B.'s older brother Shelton testified similarly.[66]

Detective Justin Brown also testified that, on November 30, 2003, after receiving

B.B.'s complaints, deputies went to the Blackwell home,[67] and Blackwell ran out of the

back door when they pulled up to the house.  He said they searched for him with K-9

units for six hours to no avail.  He testified that Blackwell later turned himself in on

December 3, 2003.[68]  After reading him his rights and executing a waiver of rights form,

the detectives took Blackwell's videotaped statement.[69]  The videotape was played for

the jury.[70]

In the recorded statement, Blackwell initially denied the charges but then told

detectives that he had sex with B.B. one time.[71]  He later admitted to having sexual

relations with her about once a week.  He denied threatening her or forcing himself on

her, and instead said that "she asked for it" by coming on to him in his bed.

---

[65]Id., p. 29.

[66]Id., pp. 37.

[67]St. Rec. Vol. 3 of 5, Trial Transcript, p. 20, 8/9/05.

[68]Id., p. 23.

[69]Id., pp. 23-26.

[70]Id., pp. 26-27.

[71]The record does not contain a transcript of the statement.  However, the substance of the statement was summarized by the Louisiana First Circuit in its findings of fact, which are entitled to deference by this court.  State v. Blackwell, 2007 WL 866646, at *1-2; St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2006-KA-1812, pp. 3-5, 3/23/07.  Furthermore, Blackwell does not contest the substance of the statements attributed to him, although he does suggest that he was coerced when he made the statements.

Based on the foregoing, the jury had before it evidence that Blackwell had vaginal intercourse on a continuing basis with his daughter beginning when she was age 10 or 11. The evidence was sufficient for the jury to conclude that Blackwell had committed the crime of aggravated rape of a minor under the age of 12.

The evidence also established that, on numerous occasions, Blackwell had oral sex and/or vaginal intercourse with B.B., after she asked him to stop and/or after she stopped resisting so that he would stop hitting her, threatening her and cursing at her. This was evidence sufficient to establish the elements of forcible rape.

Finally, the jury heard evidence that B.B. was in fact Blackwell's biological daughter, and that while she was still under the age of 15, he fondled her breasts and vagina with his hands. This was sufficient to establish the crime of aggravated incest.

The evidence, viewed in a light most favorable to the prosecution, was sufficient to support the guilty verdicts on all of the three sex offenses. The denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Blackwell is not entitled to relief on this claim.

## IX.    INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 5)

Blackwell alleges that defense counsel failed to investigate and provide defenses of mental defect or insanity and actual innocence.[72] The state trial court denied relief on this claim as factually baseless since a sanity commission was convened and Blackwell

---

[72]Rec. Doc. No. 3-1, p. 10.

was found to be competent to stand trial. The Louisiana First Circuit and the Louisiana Supreme Court subsequently denied the related writ applications without further comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d

at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

In this case, the record reflects that counsel diligently challenged the testimony of each of the State's witnesses with thorough cross-examination. Counsel presented several defense witnesses in an effort to establish, or at least raise a doubt, for the jury that B.B. was fabricating the claims against her father. The record demonstrates that counsel in fact presented evidence attempting to show Blackwell's innocence.

As to Blackwell's mental state and competence, his appointed counsel engaged in several efforts to challenge the prosecution on that basis. Blackwell's first appointed counsel moved to suppress Blackwell's confession to detectives on grounds that his diminished mental state left him susceptible to coercion by the detectives.[73] The court heard testimony and argument on that motion from Blackwell's second appointed

---

[73]St. Rec. Vol. 1 of 5, Motion to Suppress Confession, 7/5/05.

counsel, who was also his trial counsel.[74]  As discussed above, the state court denied the motion to suppress.

Trial counsel also filed a motion to have a sanity commission appointed to evaluate Blackwell's mental state.[75]  The commission was appointed, and the psychiatric report issued by Dr. John W. Thompson, Jr., concluded that Blackwell was _not_ mentally impaired at the time of the offenses:

> In summary, Mr. Blackwell could _not_ qualify for an insanity defense as he did not have an active psychiatric disorder or mental defect at the time that would impair his ability to distinguish between right from wrong with respect to his conduct.

(emphasis in original) State Record Volume 1 of 5, Psychiatric Report on Sanity at the Time of the Offense Evaluation, page 2, March 4. 2005.  Dr. Thompson also reported that Blackwell was rational and competent to proceed to trial:

> Mr. Blackwell can relate to his attorney with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

State Record Volume 1 of 5, Psychiatric Report on Competence to Stand Trial Evaluation, page 1, December 1, 2004.  On May 19, 2005, the state trial court held a

---

[74]St. Rec. Vol. 3 of 5, Trial Transcript, 8/8/10.

[75]St. Rec. Vol. 1 of 5, Appointment of Sanity Commission, 11/30/04; Application for Hearing to Determine Defendant's Mental Condition, 11/23/04; Trial Court Order, 11/29/04.

hearing, considered the commission's reports and found Blackwell competent to stand trial.[76]

The record demonstrates that Blackwell's trial counsel in fact pursued the issue of his mental competence at the time of the confession, at the time of the offenses and in connection with his ability to stand trial. The medical evidence did not support an insanity defense. Once these matters were resolved against Blackwell by the psychiatrists and the trial court, counsel had no medical or legal basis to present an insanity defense at trial. Blackwell has <u>not</u> demonstrated that counsel erred in failing further to pursue such a defense.

The record before this court demonstrates that trial counsel's efforts were reasonable and competent. Contrary to Blackwell's argument, counsel presented evidence of his motive defense, tending to establish his innocence. Counsel attempted to have the inculpatory statements suppressed based on Blackwell's diminished mental capacity. Counsel moved for a sanity commission to evaluate Blackwell's mental capacity. The fact that counsel's efforts were not successful does not render his performance unconstitutionally deficient. <u>See</u> <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's

---

[76]St. Rec. Vol. 1 of 5, Minute Entry, 5/19/05; Psychiatric Reports, 3/4/05; St. Rec. Vol. 4 of 5, Hearing Transcript, 5/19/05.

defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

For these reasons, the state courts' denial of relief was not contrary to or an unreasonable application of Strickland. Blackwell is not entitled to relief on this claim.

## X.  CUMULATIVE ERRORS (CLAIM NO. 6)

Blackwell argues that the cumulative effect of the errors alleged in the foregoing grounds for relief amounted to a violation of his due process rights. Blackwell raised this argument on post-conviction review in the state trial court, which denied relief because it was based on his other meritless claims.

This federal court on habeas corpus review may grant relief only where it finds a constitutional error or violation of due process which would render the trial unfair. Lisenba, 314 U.S. at 236-37; Peters, 942 F.2d at 940. As outlined above, Blackwell has failed to establish any denial of a constitutional right through the claims properly brought to and reviewed by this court.[77] Having found no merit to the claims, I cannot find a cumulative effect that establishes a denial of due process which rendered his trial fundamentally unfair or his convictions unconstitutional. The denial of relief on this claim was neither contrary to or an unreasonable application of Supreme Court law.

---

[77]He has presented one claim which is in procedural default and is not properly before this court.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Iddo

Blackwell for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED**

and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[78]

New Orleans, Louisiana, this __16th__ day of August, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[78]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.